## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSSETTS

| | |
|---|---|
| **ANNA GILL,** individually and on behalf of all others similarly situated, | Case No. |
| *Plaintiff,* | **CLASS ACTION COMPLAINT** |
| | **DEMAND FOR JURY TRIAL** |
| *v.* | |
| **LIBERTY MUTUAL GROUP, INC.,** a Massachusetts registered corporation, | |
| *Defendant.* | |

## <u>CLASS ACTION COMPLAINT</u>

Plaintiff Anna Gill ("Gill" or "Plaintiff") brings this Class Action Complaint and Demand for Jury Trial against Defendant Liberty Mutual Group, Inc. ("Liberty Mutual" or "Defendant") to stop Defendant from violating the Telephone Consumer Protection Act by making pre-recorded unsolicited calls to consumers as well as to consumers registered on the Do Not call registry ("DNC"), and to otherwise obtain injunctive and monetary relief for all persons injured by Liberty Mutual's conduct. Plaintiff, for her Complaint, alleges as follows upon personal knowledge as to herself and her own acts and experiences, and, as to all other matters, upon information and belief, including investigation conducted by her attorneys.

### PARTIES

1.     Plaintiff Gill is a resident of Waukesha, Wisconsin.

2.     Defendant Liberty Mutual is a Massachusetts corporation headquartered in Boston, Massachusetts with operational centers throughout the United States. Liberty Mutual conducts business throughout this District and the United States.

**JURISDICTION AND VENUE**

3.     This Court has federal question subject matter jurisdiction over this action under 28 U.S.C. § 1331, as the action arises under the Telephone Consumer Protection Act, 47 U.S.C. §227 ("TCPA").

4.     This Court has personal jurisdiction over Defendant and venue is proper in this District under 28 U.S.C. § 1391(b) because Defendant maintains its headquarters in this District, and because the wrongful conduct giving rise to this case was directed from this District.

**TELEMARKETING INTRODUCTION**

5.     As the Supreme Court explained at the end of its term last year, "Americans passionately disagree about many things. But they are largely united in their disdain for robocalls. The Federal Government receives a staggering number of complaints about robocalls—3.7 million complaints in 2019 alone. The States likewise field a constant barrage of complaints. For nearly 30 years, the people's representatives in Congress have been fighting back." *Barr v. Am. Ass'n of Political Consultants*, No. 19-631, 2020 U.S. LEXIS 3544, at *5 (U.S. July 6, 2020).

6.     When Congress enacted the TCPA in 1991, it found that telemarketers called more than 18 million Americans every day. 105 Stat. 2394 at § 2(3).  By 2003, due to more powerful autodialing technology, telemarketers were calling 104 million Americans every day. *In re Rules and Regulations Implementing the TCPA of 1991*, 18 FCC Rcd. 14014, ¶¶ 2, 8 (2003).

7.     The problems Congress identified when it enacted the TCPA have only grown exponentially in recent years.

8.     Industry data shows that the number of robocalls made each month increased from 831 million in September 2015 to 4.7 billion in December 2018—a 466% increase in three years.

9.     According to online robocall tracking service "YouMail," 4.6 billion robocalls were placed in February 2021 alone, at a rate of 165.1 million per day. www.robocallindex.com (last visited Mar. 2, 2021).

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice…to any telephone number assigned to a…cellular telephone service." *See* 47 U.S.C. §227 (b)(1)(A)(iii).

11.     According to findings by the Federal Communication Commission ("FCC"), the agency Congress vested with authority to issue regulations implementing the TCPA, such calls are prohibited because, as Congress found, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls, and such calls can be costly and inconvenient.

12.     While "prior express consent" is required for all automated and prerecorded calls, in 2013, the FCC required "prior express written consent" for all such telemarketing calls to wireless numbers and residential lines. Specifically, it ordered that:

> [A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer: (1) received "clear and conspicuous disclosure" of the consequences of providing the requested consent, i.e. that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates.[] In addition, the written agreement must be obtained "without requiring, directly or indirectly, that the agreement must be executed as a condition of purchasing any good or service.[]"

*In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 F.C.C. Rcd. 1830, 1844 (2012) (footnotes omitted).

13.     "Telemarketing" is defined as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services, which is transmitted to any person." 47 C.F.R §64.1200(f)(12).

## LIBERTY MUTUAL PLACES PRE-RECORDED
## SOLICITATION CALLS TO CONSUMERS

14.     Liberty Mutual provides insurance coverage to consumers that includes vehicle coverage insurance.

15.     Liberty Mutual places cold calls to consumers in order to sell insurance coverage, including unsolicited prerecorded calls.

16.     Employees from Liberty Mutual have complained online about the cold calling they were required to engage in. These complaints include:

### Sales oriented environment
Sales Representative (Current Employee) - The Woodlands, TX - August 1, 2017

Management is great and strives to give you the tools you need to succeed. The day, the week, the month is full of prospecting and networking. Everyone needs insurance so everyone is a prospect. The hardest part is cold-calling and waiting for people to decide to purchase. The most enjoyable part is getting to speak with people and explain the products more thoroughly. [1]

### Good place to work
Sales Representative (Former Employee) - Atlanta, GA - June 11, 2017

Workplace culture was good, very competitive. lots of cold calling, you are responsible for the entire sales process, finding the prospects, writing the business, and servicing the account. [2]

### 5.0 ★★★★★
Sales Representative | Denver, CO | Jan 17, 2019

### Find and build your Sources
Great coaching during initial training. You have to really structure in a reliable source to help your phone to ring. Don't be afraid to cold call when the source dries up. [3]

---

[1] https://www.indeed.com/cmp/Liberty-Mutual-Insurance/reviews?fjobtitle=Sales+Representative&start=100
[2] *Id.*
[3] https://www.simplyhired.com/company/Liberty%20Mutual/?l=Denver%2C+CO

17.     In job postings for Outbound Sales Representatives, Liberty Mutual states that the employees will place sales calls from internet generated leads and place outbound sales calls to prospects. Previous cold calling experience is also recommended in the job postings:

## Outbound Sales Representative

Liberty Mutual Insurance    Plano, TX

- Advance your career at Liberty Mutual - A Fortune 100 Company!
- Under limited supervision, places outbound sales calls from internet generated leads.
- Manages leads by tracking, following up, and closing sales to achieve sales and productivity objectives.
- Utilizes in-depth coverage and quoting knowledge, performs direct sales and selling techniques for auto and home insurance policies, and conducts front line underwriting risk evaluation in accordance with established rules & guidelines.
- Places outbound sales calls to prospects.

[4]

- Previous cold calling experience is recommended.
- We value your hard work, integrity and commitment to positive change. [5]

18.     Liberty Mutual also generates business by purchasing leads from affiliates[6] and other third-party sites such as MediaAlpha.com.[7]

19.     Some of these lead sources do not obtain *prior express written consent* from consumers when selling the lead to Liberty Mutual, who then sends them prerecorded calls without the required written consent.

20.     As explained by the Federal Communications Commission ("FCC") in its 2012 order, the TCPA requires "*prior express written consent* for all autodialed or pre-recorded [solicitation] calls to wireless numbers and residential lines." *In the Matter of Rules and Regulations Implementing the Telephone Consumer Protection Act of 1991*, CG No. 02-278, FCC 12-21, 27 FCC Rcd. 1830 ¶ 2 (Feb. 15, 2012).

---

[4] https://jobsearcher.com/j/outbound-sales-representative-at-liberty-mutual-insurance-in-plano-tx-4MQmBE
[5] *Id.*
[6] https://www.libertymutual.com/affiliate-program
[7] https://mediaalpha.com/marketing-partners/

21.     There are numerous complaints posted online from consumers who have received unsolicited calls from Liberty Mutual, including calls made using a pre-recorded voice message. This is a small sample of those complaints, many of which were addressed directly to Liberty Mutual on the Liberty Mutual Better Business Bureau ("BBB") page:

**BBB Complaints:**

- "**I have no idea how they have my phone number**, but this company continues to call over and over again without leaving messages. **I have called back to request they stop calling, yet here I am still receiving several calls a day!** This is a terrible way to do business, and believe me when I say that I will never do business with this company ever! Stop calling me!!"[8] (emphasis added)
- "Totally disgusted with this company. Simply asked for a quote for insurance and since, have been receiving MULTIPLE emails and phone calls. Have asked them to stop contacting me, but to no avail. Have told them their rates are too high. I WOULD NEVER DO BUSINESS WITH THIS COMPANY."[9]
- "**I am receiving numerous robo text from Liberty Mutual**. I have talked to the customer service department twice and although they say they have removed my info from their system I'm still being contacted. I DO NOT AND HAVE NEVER HAVE HAD A PRODUCT WITH LIBERTY MUTUAL. These text are happening as early as six in the morning and as late as eleven at night. The text are coming from numerous different numbers both showing local area codes as well as out of state area codes. I have tried to be nice as when speaking to customer service twice but no more."[10] (emphasis added)

**Telemarketer Reporting Sites:**

- "I don't need a quote and they keep calling me"[11]
- "Too many calls"[12]
- "**Liberty Mutual and they won't remove me from their call list.** It says press 9 to be removed but that doesn't work."[13] (emphasis added)
- "Unsolicited call"[14]
- "Called b4 7am."[15]

---

[8] https://www.bbb.org/us/ma/boston/profile/insurance-companies/liberty-mutual-group-0021-89/customer-reviews
[9] *Id.*
[10] https://www.bbb.org/us/ma/boston/profile/insurance-companies/liberty-mutual-group-0021-89/complaints
[11] https://800notes.com/Phone.aspx/1-888-578-2146/14
[12] *Id.*
[13] *Id.*
[14] https://www.shouldianswer.com/phone-number/8885782146
[15] *Id.*

- "liberty mutual calling multiple times for quote"[16]
- **"I didn't contact them online or otherwise. They just started calling** and NEVER leave a message. I have no idea how or where they got my number. I blocked the number… They call me every day at least 5 or 6 times a day."[17] (emphasis added)

## PLAINTIFF'S ALLEGATIONS

**Liberty Mutual Placed Pre-Recorded and Solicitation Calls to Plaintiff's DNC Registered Cell Phone Number Without her Prior Written Consent**

22.     Plaintiff Gill registered her cell phone number on the DNC on April 27, 2010.

23.     Plaintiff Gill uses her cell phone for personal use only. It is not used for business purposes.

24.     On February 22, 2021, Plaintiff received a call from Defendant to her cell phone from phone number 888-578-2146 at 8:25 AM.

25.     Upon investigation, if the 888-578-2146 phone number is called, the caller identifies as Liberty Mutual.

26.     This call was not answered and no voicemail was left.

27.     On February 22, 2021 at 9:51 AM, Plaintiff received a second call from Defendant from phone number 541-801-3318 to her cell phone number.

28.     Plaintiff answered the call and heard the pre-recorded voice message identifying the caller as "Liberty Mutual," and was presented with an interactive voice response system with directions to press a certain number in order to be connected with a Liberty Mutual agent to obtain an insurance quote.

29.     Plaintiff hung up the phone.

30.     Upon investigation, when 541-801-3318 is called back, an automated message identifies the caller as Liberty Mutual.

---

[16] *Id.*
[17] https://whocallsme.com/Phone-Number.aspx/8885782146/5

31.     On February 23, 2021, Plaintiff received a 3rd call from Defendant to her cell phone from the phone number 888-578-2146 at 4:13 PM.

32.     This call was not answered and no voicemail was left.

33.     Plaintiff received a 4th unsolicited call from Defendant on February 25, 2021 from 888-578-2146 to her cell phone at 8:37 AM.

34.     Plaintiff missed this call, but she called 888-578-2146 back at 8:45 AM on February 25, 2021.

35.     When Plaintiff called 888-578-2146 back, she heard an automated voice message identifying the company name as Liberty Mutual.

36.     Plaintiff did not speak to a live agent. She hung up the phone when she learned who was calling.

37.     Plaintiff Gill did not provide Defendant Liberty Mutual with written consent to place pre-recorded calls or solicitation calls to her cell phone.

38.     Defendant's unauthorized telephone calls harmed Plaintiff in the form of annoyance, nuisance, and invasion of privacy, and disturbed Gill's use and enjoyment of her cell phone, in addition to the wear and tear on the phone's hardware (including the phone's battery) and the consumption of memory on the phone.

39.     Seeking redress for these injuries, Gill, on behalf of herself and Classes of similarly situated individuals, brings suit under the Telephone Consumer Protection Act, 47 U.S.C. § 227, *et seq.*, which prohibits pre-recorded calls to residential and cellular phone numbers, as well as unsolicited calls to phone numbers registered on the DNC.

## CLASS ALLEGATIONS

### Class Treatment Is Appropriate for Plaintiff's TCPA Claims
### Arising From Calls Made by Liberty Mutual

40.     Plaintiff brings this action pursuant to Federal Rule of Civil Procedure 23(b)(2)

and Rule 23(b)(3) on behalf of herself and all others similarly situated and seeks certification of

the following Classes:

> **Pre-recorded Class**: All persons in the United States who from four years prior to
> the filing of this action through class certification (1) Liberty Mutual called on their
> cellular telephone number, (2) using a pre-recorded voice, (3) for substantially the
> same purpose that Liberty Mutual called Plaintiff, and (4) whose telephone number
> Liberty Mutual obtained in a substantially similar way that it obtained Plaintiff's
> number.

> **Do Not Call Registry Class**: All persons in the United States who from four years
> prior to the filing of this action through class certification (1) Liberty Mutual called
> more than one time, (2) within any 12-month period, (3) where the person's
> residential telephone number had been listed on the National Do Not Call Registry
> for at least thirty days, (4) for substantially the same purpose that Liberty Mutual
> called Plaintiff, and (5) whose telephone number Liberty Mutual obtained in a
> substantially similar way that it obtained Plaintiff's number.

41.     The following individuals are excluded from the Classes: (1) any Judge or

Magistrate presiding over this action and members of their families; (2) Defendant, their

subsidiaries, parents, successors, predecessors, and any entity in which Defendant or its parents

have a controlling interest and their current or former employees, officers and directors; (3)

Plaintiff's attorneys; (4) persons who properly execute and file a timely request for exclusion

from the Classes; (5) the legal representatives, successors or assigns of any such excluded

persons; and (6) persons whose claims against Defendant have been fully and finally adjudicated

and/or released. Plaintiff anticipates the need to amend the Class definitions following

appropriate discovery.

42.     **Numerosity**: On information and belief, there are hundreds, if not thousands of

members of the Classes such that joinder of all members is impracticable.

43.    **Commonality and Predominance**: There are many questions of law and fact common to the claims of Plaintiff and the Classes, and those questions predominate over any questions that may affect individual members of the Classes. Common questions for the Classes include, but are not necessarily limited to the following:

(a)  whether Defendant placed calls to Plaintiff and members of the Classes using a pre-recorded voice;

(b)  whether Defendant placed calls to Plaintiff and members of the Classes without first obtaining written consent to make the calls;

(c)  whether Defendant placed multiple calls to Plaintiff and members of the Do Not Call Registry class without first obtaining consent to make the calls;

(d)  whether Defendant's calls to the Plaintiff and other consumers were for telemarketing purposes;

(e)  whether Defendant's conduct constitutes a violation of the TCPA; and

(f)  whether members of the Classes are entitled to treble damages based on the willfulness of Defendant's conduct.

44.    **Adequate Representation**: Plaintiff will fairly and adequately represent and protect the interests of the Classes, and has retained counsel competent and experienced in class actions. Plaintiff has no interests antagonistic to those of the Classes, and Defendant has no defenses unique to Plaintiff. Plaintiff and her counsel are committed to vigorously prosecuting this action on behalf of the members of the Classes, and have the financial resources to do so. Neither Plaintiff nor her counsel have any interests adverse to the Class.

45.    **Appropriateness**: This class action is also appropriate for certification because Defendant has acted or refused to act on grounds generally applicable to the Classes and as a whole, thereby requiring the Court's imposition of uniform relief to ensure compatible standards of conduct toward the members of the Classes and making final class-wide injunctive relief appropriate. Defendant's business practices apply to and affect the members of the Classes uniformly, and Plaintiff's challenge of those practices hinges on Defendant's conduct with

10

respect to the Classes as wholes, not on facts or law applicable only to Plaintiff. Additionally, the damages suffered by individual members of the Classes will likely be small relative to the burden and expense of individual prosecution of the complex litigation necessitated by Defendant's actions. Thus, it would be virtually impossible for the members of the Classes to obtain effective relief from Defendant's misconduct on an individual basis. A class action provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court.

### FIRST CLAIM FOR RELIEF
**Telephone Consumer Protection Act**
**(Violation of 47 U.S.C. § 227)**
**(On Behalf of Plaintiff Gill and the Pre-recorded Class)**

46.    Plaintiff repeats and reallege paragraphs 1 through 44 of this Complaint and incorporates them by reference.

47.    Defendant made solicitation calls to Plaintiff and the other members of the Pre-recorded Class using a pre-recorded voice message.

48.    These pre-recorded voice calls were made *en masse* without the prior express written consent of the Plaintiff and the other members of the Pre-recorded Class.

49.    Defendant has, therefore, violated 47 U.S.C. § 227(b)(1). As a result of Defendant's conduct, Plaintiff and the other members of the Class are each entitled to a minimum of $500 in damages, and up to $1,500 in damages, for each violation.

### SECOND CAUSE OF ACTION
**Telephone Consumer Protection Act**
**(Violations of 47 U.S.C. § 227)**
**(On Behalf of the Plaintiff and the Do Not Registry Class)**

50.    Plaintiff repeats and realleges paragraphs 1 through 44 of this Complaint and incorporates them by reference.

51.     The TCPA's implementing regulation, 47 C.F.R. § 64.1200(c), provides that "[n]o person or entity shall initiate any telephone solicitation" to "[a] residential telephone subscriber who has registered her or her telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the federal government."

52.     Any "person who has received more than one telephone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed under this subsection may" may bring a private action based on a violation of said regulations, which were promulgated to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object.  47 U.S.C. § 227(c).

53.     Defendant violated 47 C.F.R. § 64.1200(c) by initiating, or causing to be initiated, telephone solicitations to telephone subscribers such as the Plaintiff and the Do Not Call Registry Class members who registered their respective telephone numbers on the National Do Not Call Registry, a listing of persons who do not wish to receive telephone solicitations that is maintained by the federal government.

54.     Defendant violated 47 U.S.C. § 227(c)(5) because Plaintiff and the Do Not Call Registry Class received more than one telephone call in a 12-month period made by or on behalf of Defendant in violation of 47 C.F.R. § 64.1200, as described above. As a result of Defendant's conduct as alleged herein, Plaintiff and the Do Not Call Registry Class suffered actual damages and, under section 47 U.S.C. § 227(c), are entitled, inter alia, to receive up to $500 in damages for such violations of 47 C.F.R. § 64.1200.

55.     To the extent Defendant's misconduct is determined to be willful and knowing, the Court should, pursuant to 47 U.S.C. § 227(c)(5), treble the amount of statutory damages recoverable by the members of the Do Not Call Registry Class.

**PRAYER FOR RELIEF**

12

**WHEREFORE**, Plaintiff Gill, individually and on behalf of the Classes, prays for the following relief:

a)  An order certifying the Classes as defined above; appointing Plaintiff as the representative of the Classes; and appointing her attorneys as Class Counsel;

b)  An award of actual and/or statutory damages for the benefit of Plaintiff and the Classes;

c)  An order declaring that Defendant's actions, as set out above, violate the TCPA;

d)  An injunction requiring Defendant to cease all unsolicited calling activity, and to otherwise protect the interests of the Classes; and

e)  Such further and other relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff requests a jury trial.

Respectfully Submitted,

**ANNA GILL**, individually and on behalf of those similarly situated individuals

Dated: March 10, 2021

By: /s/ Jason Campbell
Jason Campbell Esq.
250 First Avenue, Unit 602
Charlestown, MA 02129
(617) 872-8652
jasonrcampbell@ymail.com

Avi R. Kaufman (Fl Bar No. 84382)*
kaufman@kaufmanpa.com
KAUFMAN P.A.
400 NW 26th Street
Miami, FL 33127
Telephone: (305) 469-5881

*Pro Hac Vice motions forthcoming

Attorneys for Plaintiff and the putative Class